**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LUIS ARNOLDO ALVAREZ FIGUEROA;
HILDA GUERRA DE ALVAREZ,
                    *Petitioners,*

            v.

MICHAEL B. MUKASEY, Attorney
General,

                    *Respondent.*

No. 05-75157

Agency Nos.
A77-852-396
A77-852-397

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 10, 2008—San Francisco, California

Filed September 10, 2008

Before: A. Wallace Tashima, M. Margaret McKeown, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Tashima

**COUNSEL**

Philip Barilovits, Dechert LLP, Palo Alto, California, for the petitioners.

Julie S. Pfluger, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

**OPINION**

TASHIMA, Circuit Judge:

Luis Arnoldo Alvarez Figueroa and Hilda Guerra de Alvarez ("Petitioners") are a married couple who concede that they

are removable aliens. They petition this Court to review the Board of Immigration Appeals' ("BIA") denial of their Application for Cancellation of Removal. Petitioners contend that the Immigration Judge ("IJ") applied improper legal standards in determining whether Petitioners had demonstrated that their removal would result in a sufficient hardship to their two citizen-children. Petitioners also argue that their petition should be granted and the IJ's opinion vacated because the IJ's opinion is indiscernible. The government, on the other hand, argues that we lack jurisdiction to hear Petitioners' challenge because Petitioners seek review of a discretionary determination, which this Court lacks jurisdiction to review, and because Petitioners failed to exhaust their administrative remedies with the BIA. For the reasons discussed below, we hold that Petitioners exhausted their challenges, that we have jurisdiction to hear their legal challenges, and that the IJ committed legal error. Thus, we grant the petition and remand the case to the BIA for further proceedings.

## I.   JURISDICTION

Petitioners invoke this Court's jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D). The government argues that we lack jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(B)(i). Because jurisdiction is disputed, we consider the jurisdictional question in Part IV.A, *infra*. We, of course, have jurisdiction to determine our own jurisdiction. *See Sareang Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir. 2000).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioners, husband and wife, are the parents of three children — Claudia, the eldest child, Louis and Natalie. The latter two are United States citizens. Petitioners and Claudia are aliens from Jalisco, Mexico.

In July 1999, Petitioners filed an Application for Asylum and Withholding of Removal with the then-Immigration and

Naturalization Service ("INS"). Shortly after filing that appli-
cation, Petitioners received from the INS a Notice to Appear
charging that they were subject to removal from the United
States. Petitioners then filed an Application for Cancellation
of Removal and Adjustment of Status.

Removal proceedings began in September 1999. At the ini-
tial hearing, Petitioners conceded removability, and the IJ des-
ignated Mexico as the country of removal. The next hearing
was held in February 2003 before Immigration Judge Wendell
A. Hollis ("IJ"). At that hearing, Petitioners withdrew their
application for asylum and pursued only cancellation of
removal and adjustment of status pursuant to the Immigration
and Nationality Act ("INA") § 240A(b), 8 U.S.C. § 1229b(b).
In the alternative, Petitioners asked for a grant of voluntary
departure pursuant to INA § 240B(b), 8 U.S.C. § 1229c(a).

In order to show that they were eligible for cancellation of
removal, Petitioners had to demonstrate that: (1) they had
been physically present in the United States for a continuous
period of not less than ten years immediately preceding the
date of their application; (2) they have been persons of good
moral character during that period; (3) they had not been con-
victed of certain offenses; and (4) removal would result in an
exceptional and extremely unusual hardship to their citizen-
children. *See* 8 U.S.C. § 1229b(b).

In support of that showing, Petitioners testified and pro-
vided other evidence that they had been physically present in
the United States for a continuous period of not less than ten
years, that they were persons of good moral character, and
that they have never been convicted of a crime. Petitioners
also testified that in the event of their removal, they would
take their children to Mexico. The IJ, in his oral opinion,
found them credible, that they met the continual presence
requirement, that they were of good moral character, and that
they had not been convicted of a crime.

To demonstrate that their removal would result in an exceptional and extremely unusual hardship to their two citizen-children, Dr. Lesleigh Franklin, a clinical psychologist, testified to the effect a move to Mexico would have on Louis, the then-13-year-old citizen-son. Louis had been diagnosed with depression and Attention Deficit Hyperactivity Disorder ("ADHD"), for which he was treated with medication. Louis' school in the United States accommodated Louis with Special Education resources. Dr. Franklin testified that Louis needed support beyond medication in order for him to maintain his academic grade level, that Louis needed services which may not be provided in Mexico, and that moving to Mexico would create enormous emotional problems for Louis. Dr. Frank Ephram Lopez, a physician and specialist in pediatrics, reported that in light of Louis' conditions, it would not be "medically advisable" to move Louis "to an environment in which medical treatment and academic support is inferior or nonexistent."

Petitioners also presented evidence that Natalie, the then-eight-year-old citizen-daughter, lacked Spanish language skills, and that she had an eye condition which may develop into something worse in her adult years, although the only treatment called for at that time was eyeglasses and future eye examinations.

The IJ, in his oral opinion, concluded that Petitioners had failed to demonstrate the necessary hardship, stating that, in order to prevail, Petitioners would have to demonstrate that the hardship would be "unconscionable." The opinion is, in part, nonsensical. *See, e.g.*, IJ Opinion at 20 ("The first observation is I cannot believe that Congress intended that Immigration Judges should look upon a child that is perfect with no health for we all know that every child has medical disorders and be it colds, infections, flu, allergies."). In part, it is also incoherent. *See, e.g.*, IJ Opinion at 26 ("But more importantly, this Court in trying to filter the (indiscernible) educational information through the (indiscernible) of the legal

analysis of exceptional and extremely unusual hardship, believes that this case falls short.").

Petitioners appealed the IJ's decision to the BIA, and the BIA adopted and affirmed the IJ's decision, citing its decision in *In re Burbano*, 20 I. & N. Dec. 872 (BIA 1994). Petitioners then filed a timely petition for review.

### III.　STANDARD OF REVIEW

Where the BIA expresses no disagreement with any part of the IJ's decision, but instead cites *In re Burbano*, as it did here, the BIA adopts the IJ's decision in its entirety. *See Abebe v. Gonzales*, 432 F.3d 1037, 1039-40 (9th Cir. 2005) (en banc). A *Burbano* affirmance signifies that the BIA has conducted an independent review of the record and has determined that its conclusions are the same as those articulated by the IJ. *See id.* at 1040. In such a case, we review the IJ's decision as if it were the decision of the BIA. *See id.* at 1040-41. And, we review legal questions addressed by the IJ *de novo*. *See Unuakhaulu v. Gonzales*, 416 F.3d 931, 937 (9th Cir. 2005).

### IV.　ANALYSIS

Petitioners first contend that the IJ erred by applying the wrong legal standard in requiring Petitioners to show that the hardship suffered by their citizen-children would be "unconscionable" — a standard expressly rejected in the BIA's precedential opinions, and by considering only the hardship currently suffered by the children due to their medical conditions without considering the hardship the children would suffer in the event that their parents were removed. They contend that the IJ's opinion should be vacated and remanded for this reason. Petitioners also contend that this Court should grant the petition, vacate the IJ's opinion, and remand to the BIA on the separate ground that the IJ's decision is indiscernible.

The government moved to dismiss this case for want of jurisdiction, but a motions panel of this Court denied that motion without prejudice to the argument being renewed before the merits panel. Thus, the government once again argues that we lack jurisdiction over this petition on the ground that Petitioners seek review of a discretionary decision. The government further argues that we lack jurisdiction because Petitioners failed to exhaust their legal challenges with the BIA. We first consider the jurisdictional questions, then address Petitioners' legal challenges on the merits.

## A. Jurisdiction

### 1. Exhaustion

As a threshold matter, the government argues that even if we have jurisdiction as a general matter to review a petitioner's challenge based upon the IJ's legal errors, we nevertheless lack jurisdiction in this case because Petitioners failed to exhaust their legal challenges before the BIA.[1]

[1] The government of course is correct that we can consider Petitioners' challenges only if those issues were raised before the BIA. *See Kaganovich v. Gonzales*, 470 F.3d 894, 896-97 (9th Cir. 2006). That is, we have jurisdiction to review a final order of removal and the issues raised in a petition for review only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Because "the policy underlying the exhaustion requirement is to give an administrative agency the opportunity to resolve a controversy or correct its own errors before judicial interven-

---

[1]The government also argues that Petitioners' contention that the IJ's decision does not provide an adequate basis for review because of the many "indiscernibles" in the opinion is being raised for the first time before this Court. Because we conclude that we do not need to reach that issue on the merits, we do not consider whether Petitioners exhausted that challenge.

tion," *Zara v. Ashcroft*, 383 F.3d 927, 931 (9th Cir. 2004), we do not employ the exhaustion doctrine in a formalistic manner, but rather inquire into whether the issue was before the BIA such that it had the opportunity to correct its error. The exhaustion doctrine requires that the petitioner "put the BIA on notice" as to the specific issues so that the BIA has "an opportunity to pass on th[ose] issue[s]." *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam). That is why a general challenge to the IJ's decision will not satisfy the exhaustion requirement, *Zara*, 383 F.3d at 930; however, a petitioner need not "elaborate on the argument" in their brief, *see Kaganovich*, 470 F.3d at 897. The issue need not even be raised at all in the brief, if it is raised in the notice of appeal. *Id.*; *Ladha v. INS*, 215 F.3d 889, 903 (9th Cir. 2000). So long as the issue was raised before the BIA, the exhaustion requirement is satisfied. *Kaganovich*, 470 F.3d at 897; *Zhang*, 388 F.3d at 721. "[O]ur precedent requires nothing more." *Kaganovich*, 470 F.3d at 897 (quoting *Zhang*, 388 F.3d at 721).

**[2]** Here, the issue of whether the IJ applied the wrong legal standard was presented to the BIA, and the BIA had the opportunity to correct its error. The IJ announced in his decision that "[i]n order to establish exceptional and extremely unusual hardship[,] an applicant for cancellation of removal must demonstrate that a spouse, parent[,] or child would suffer hardship that is substantially beyond that which would ordinarily be expected to result from the alien's deportation and *that such hardship would be unconscionable*." IJ Opinion at 22 (emphasis added). Petitioners then stated in their notice of appeal that "[d]enial of Respondent's Application for Cancellation of Removal violated the statute [and] the regulations" and that "there are also other errors of fact and law made by the Immigration Judge in his/her decision, which will be described in the brief that will be submitted with this appeal upon receipt of the transcript." In their brief to the BIA, as the government acknowledges, Petitioners stated that the exceptional and extremely unusual hardship standard did

not require them to demonstrate that the hardship was "unconscionable." The government argues that this was not enough to exhaust this issue because Petitioners did not "put forward a developed argument."[2] This, of course, is not our standard; Petitioners need not "argue" anything so long as the issue is presented to the BIA. *Kaganovich*, 470 F.3d at 897.

**[3]** It's clear that the issue of the IJ's erroneous statement of the law was presented to the BIA. Because the BIA "had a full opportunity to resolve the controversy *or correct its own errors* before judicial intervention," Petitioners' challenges to the IJ's errors of law were exhausted. *Ladha*, 215 F.3d at 903 (emphasis added); *see also Arreguin-Moreno v. Mukasey*, 511 F.3d 1229, 1230 (9th Cir. 2008) ("As we recognized in *Abebe*, when the BIA cites *Burbano* in its decision, all issues presented before the IJ are deemed to have been presented to the BIA."). "Where, as here, the agency *was* aware of the problem, where it *did* apply its expertise, where it *did* exercise its discretion, it is bizarre—and decidedly unfair to petitioner— for us to refuse to review that decision . . . ." *See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1186 (9th Cir. 2001) (emphasis in original) (quoting *Singh-Bhathal v. INS*, 170 F.3d 943, 948 (9th Cir. 1999) (Kozinski, J., dissenting in part)).

Petitioners have exhausted their administrative remedies.

### 2. *Jurisdiction over legal challenges*

Next, the government argues that we should dismiss the petition for lack of jurisdiction because Petitioners' challenge is nothing more than a challenge to the BIA's discretionary determination that Petitioners failed to establish their eligibility for cancellation of removal because they did not demonstrate that their removal to Mexico would cause an

---

[2]The government cites *Silva v. Gonzales*, 463 F.3d 68, 72 (1st Cir. 2006), in support of this argument.

"exceptional and extremely unusual hardship" to their quali-
fying relatives. Petitioners, on the other hand, argue that we
do have jurisdiction because they are not challenging the IJ's
discretionary determinations, but instead are challenging the
IJ's decision on the ground that the IJ applied the wrong legal
standards.

Under 8 U.S.C. § 1252, we have jurisdiction to review final
orders of the BIA which call for a petitioner's removal. *See
Chuyon Yon Hong v. Mukasey*, 518 F.3d 1030, 1034 (9th Cir.
2008). We lack jurisdiction, however, to review the BIA's
discretionary determination that an alien failed to prove that
her removal would result in "exceptional and extremely
unusual hardship to the alien's spouse, parent, or child, who
is a citizen of the United States or an alien lawfully admitted
for permanent residence." *See Martinez-Rosas v. Gonzales*,
424 F.3d 926, 929-30 (9th Cir. 2005) (citing 8 U.S.C.
§ 1252(a)(2)(B)(i)[3]).

**[4]** Notwithstanding the jurisdiction-stripping provision of
8 U.S.C. § 1252(a)(2)(B)(i), the REAL ID Act of 2005
restored judicial review of "constitutional claims or questions

---

[3]Section 1252(a)(2)(B)(i) provides:

> Notwithstanding any other provision of law (statutory or nonsta-
> tutory), including section 2241 of Title 28, or any other habeas
> corpus provision, and sections 1361 and 1651 of such title, and
> except as provided in subparagraph (D), and regardless of
> whether the judgment, decision, or action is made in removal pro-
> ceedings, no court shall have jurisdiction to review—

> (i)   any judgment regarding the granting of relief under section
> 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title[.]

Section 1229b pertains to cancellation of removal and adjustment of sta-
tus for certain nonpermanent residents. *See* 8 U.S.C. § 1229b. As we have
discussed, to be eligible for an adjustment of status under § 1229b, an
alien must "establish[ ] that removal would result in exceptional and
extremely unusual hardship to the alien's spouse, parent, or child, who is
a citizen of the United States or an alien lawfully admitted for permanent
residence." *Id.* § 1229b(b)(1)(D).

of law raised upon a petition for review filed with a[ ] . . . court of appeals." *See* Pub. L. No. 109-13, Div. B., § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (2005), codified at 8 U.S.C. § 1252(a)(2)(D).[4] "The plain language of the REAL ID Act grants jurisdiction to appellate courts to review questions of law presented in petitions for review of final orders of removal, even those pertaining to otherwise discretionary determinations." *Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006). We have construed § 1252(a)(2)(D) to provide jurisdiction for challenges to the agency's interpretation and application of § 1229b(b)(1)(D)'s "exceptional and extremely unusual hardship" standard based upon international law, *see Cabrera-Alvarez v. Gonzales*, 423 F.3d 1006, 1009 (9th Cir. 2005) (holding that we had jurisdiction to consider whether the BIA's interpretation of the "exceptional and extremely unusual hardship" standard violated international law), and constitutional law, *see Martinez-Rosas*, 424 F.3d at 930 (holding that we had jurisdiction to consider whether the agency's application of the "exceptional and extremely unusual hardship" standard violated the petitioner's constitutional right to due process); *Ramirez-Perez v. Ashcroft*, 336 F.3d 1001, 1005 (9th Cir. 2003) ("Whether the BIA's interpretation of the hardship standard violates due process is not a 'judgment regarding the granting' of cancellation of removal relief. Rather, it presents a question of statutory construction.").

  On the other hand, we have construed 8 U.S.C. § 1252(a)(2)(B)(i) and § 1252(a)(2)(D) to preclude review of a challenge based upon the application of the law to the facts

---

[4]Section 1252(a)(2)(D) provides:

  Judicial review of certain legal claims

  Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

of the particular case, even when that challenge is cloaked as a legal challenge. *See Martinez-Rosas*, 424 F.3d at 930 (concluding that the petitioner's argument that the IJ violated her right to due process by misapplying the facts of her case to applicable law was "nothing more than an argument that the IJ abused his discretion, a matter over which we have no jurisdiction").

Here, Petitioners do not argue that the IJ made a legal error by misapplying the facts of their case to the applicable law; rather, they argue that the IJ made legal errors in understanding the meaning of "exceptional and extremely unusual hardship."[5] While our Circuit has not directly addressed whether we have jurisdiction over challenges based on the IJ's employment of an improper legal standard when construing the meaning of "exceptional and extremely unusual hardship," the Seventh Circuit has:

> Neither the IJ nor the Board thought that his mother's hardship would be "exceptional and extremely unusual," the statutory standard for cancellation of removal based on hardship to an alien's immediate relative. 8 U.S.C. § 1229b(b)(1). We lack jurisdiction to review [petitioner's] contention that the agency should have exercised discretion in his favor. . . .

> The REAL ID Act of 2005[, however,] creates an exception for constitutional contentions and other pure issues of law. [Petitioner] does advance [an] argument[ ] that meet[s] this description. . . that the immigration judge made a legal error in understand-

---

[5]*See* Petitioner's Brief at 21 ("[T]he Alvarez family maintains that the IJ . . . made a legal mistake in holding that the hardship standard required a showing of 'unconscionability.' "); *id.* at 39-41 (arguing that the IJ failed to consider the effect that the parents' removal would have on the citizen-children).

ing the meaning of "exceptional and extremely
unusual hardship."

*Mireles v. Gonzales*, 433 F.3d 965, 968-69 (7th Cir. 2006)
(statutory citation omitted). The Seventh Circuit then con-
cluded that it had jurisdiction to hear the petitioner's chal-
lenge, but ultimately decided that the IJ in that case "used the
right legal standard." *Id.* at 969.

[5] In addition, we have concluded in other contexts that
we have jurisdiction to consider whether the BIA failed to
apply the proper legal standard even when the underlying
decision was a discretionary one. For example, we have held
that we have jurisdiction to consider whether the BIA failed
to apply the correct legal standard in determining whether the
petitioner's specific crime was a "particularly serious crime,"
even though whether a crime is particularly serious is a dis-
cretionary determination which we lack jurisdiction to review.
*See Afridi*, 442 F.3d at 1217-21. In *Afridi*, the petitioner
sought review of the BIA's failure to interpret "particularly
serious crime" consistently with its own precedent. *Id.* at
1217. We characterized that challenge as one that raised
"questions of statutory construction," and concluded that
whether the BIA employed an improper standard in making
that determination is a question of law which we have juris-
diction to review. *See id.* at 1218-19 ("While we cannot
reweigh evidence to determine if the crime was indeed partic-
ularly serious, we can determine whether the BIA applied the
correct legal standard in making its determination.").

[6] We also have explicitly rejected the view that because
the IJ's decision is discretionary, it is beyond our review even
if the IJ misapplies the law. In *Hernandez v. Aschroft*, 345
F.3d 824 (9th Cir. 2003), the government argued that we
lacked jurisdiction to review the BIA's decision that the non-
viabiliy of petitioner's marriage was a proper basis for deny-
ing her adjustment status even though the BIA's precedent
had long established that the nonviability of a marriage at the

time of adjustment is not a permissible basis for denying a petition. *Id.* at 845-47. The government further argued that we lacked jurisdiction to review that error because the adjustment of status is a matter left to the BIA's discretion. *See id.* at 845. Rejecting that argument, we held in *Hernandez* that we do have jurisdiction to hear such a challenge:

> The BIA has no discretion to make a decision that is contrary to law. . . . A nonprecedential decision by the BIA in defiance of its own precedential case law simply cannot be classified as discretionary. . . . As we have explained before, the BIA must exercise its discretion within the constraints of law.
>
>     . . . . When the BIA acts where it has no legal authority to do so, it does not make a discretionary decision, and such a determination is not protected from judicial review. Because the decision made by the BIA was contrary to law, it was not discretionary and jurisdiction exists to review the determination.

*Id.* at 846-47 (internal citations, footnote, emendations, and quotation marks omitted).

**[7]** Because Petitioners argue that the IJ failed to follow BIA precedent and misconstrued the statute when determining whether Petitioners had demonstrated "exceptional and extremely unusual hardship" under 8 U.S.C. § 1229b(b)(1)(D), we hold that we have jurisdiction to review their challenge.

## B. Legal Error

As for the merits of Petitioners' challenge, Petitioners argue that the IJ made legal errors by requiring Petitioners to demonstrate that removal would result in an unconscionable hardship to their citizen-children and by failing to consider

the hardship the children would suffer in the event of their parents' removal.[6] We consider each in turn.

### 1. Unconscionability

[8] Petitioners argue that the IJ erred as a matter of law by requiring Petitioners to show that their children "would suffer hardship substantially beyond that which would ordinarily be expected to result from the alien's deportation *and that such hardship would be unconscionable*." Under BIA case law, Petitioners need not show that the hardship would be unconscionable. Indeed, the BIA has said just the opposite. *See In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 61 (BIA 2001) (en banc) ("[W]e do not find that an 'unconscionable' standard is an appropriate one to apply in evaluating a respondent's eligibility for cancellation of removal under section 240A(b) of the Act."); *see also In re Recinas*, 23 I. & N. Dec. 467, 468 (BIA 2002) ("We specifically stated . . . that the alien need not show that such hardship would be 'unconscionable.' "). Therefore, the IJ erred in requiring Petitioners to show that their removal would result in an "unconscionable" hardship to their citizen-children.

### 2. Failure to analyze how removal would affect the citizen-children

Petitioners next argue that the IJ committed legal error by focusing only upon the children's present medical conditions and by failing to analyze how their parents' deportation would affect the citizen-children in the future.

---

[6]Petitioners also argue that the IJ erred when the IJ failed to consider the most important factors set forth in BIA and Ninth Circuit precedent for determining whether qualifying citizen-children would suffer "exceptional and extremely unusual hardship" if their parents were removed. Because we grant the petition based upon the other challenges, we do not reach the question of whether the IJ made a legal error by failing to consider certain factors.

**[9]** Petitioners are correct. The IJ read the statute and BIA case law as requiring him to determine whether the children were *currently* suffering from an exceptional and extremely unusual hardship, whereas the law requires the IJ to consider whether the citizen-children *would* suffer an exceptional and extremely unusual hardship in the future should their parents be removed. *See* 8 U.S.C. § 1229b(b)(1)(D) (stating that the alien must "establish[ ] that removal *would result* in exceptional and extremely unusual hardship to the alien's . . . child, who is a citizen of the United States") (emphasis added); *Cabrera-Alvarez*, 423 F.3d at 1012 ("If the children will accompany the removed parent, the agency considers . . . adverse conditions that [the children] might experience in the country of removal[.]" (citing *In re Monreal*, 23 I. & N. Dec. at 63-64)); *In re Recinas*, 23 I. & N. Dec. at 468 ("We . . . noted that, in deciding a cancellation of removal claim, consideration should be given to the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives."); *In re Monreal*, 23 I. & N. Dec. at 58 ("[A]n alien must show that his or her qualifying relative would suffer exceptional and extremely unusual hardship if the alien is deported.").

For example, the IJ stated:

> The 8 year old child has astigmatism and has a [*sic*] ocular disorder with a history that runs in the family. The Court cannot find that astigmatism and wearing eyeglasses which is a common occurrence rises to the level of exceptional and extremely unusual hardship. I cannot find that this medical condition, not to take lightly, but people wear glasses because they can't see. While it may be a hardship to the person, I think that Congress intended not to include someone who had an astigmatism.

IJ Opinion at 23. As for the son, Louis, the IJ also analyzed his present condition and not what effect the removal would have on him:

> L[o]uis is a 13 year old child who has ADHD. . . . [Louis] receives resources and special help to help him maintain his grade point average for two hours and 40 minutes a week. He . . . receives the help of a medical psychological social worker . . . [T]his Court does not take lightly the medical diagnosis of attention deficit disorder, but the Court believes that when it looks at the services that are provided and looks at the test scores of this child, and looks at documents that have been presented, the Court believes that on this (indiscernible) hardship to exceptional and extremely unusual hardship, the Court cannot find that Luis' condition is compelling or serious enough to rise to the level of exceptional and extremely unusual hardship.

IJ Opinion at 24.

[10] The IJ has, thus, misconstrued the statute and BIA precedent. The inquiry is whether, in the event of the parents' removal, the Alvarezes' daughter's eye condition would create an exceptional hardship in the country of return and whether Louis' ADHD and depression would create an exceptional hardship for him in the country of return. It is a future-oriented analysis, not an analysis of their present conditions. Congress did not provide for the exercise of discretion based upon whether the citizen-children already faced an extremely unusual hardship *as they live in the United States*; rather, Congress intended that discretion in cancellation of removal cases be exercised on the basis of whether removal *would result* in an exceptional and extremely unusual hardship to the citizen-children.

"[I]t is clear that BIA does not exercise its discretion when it acts in a matter contrary to law. Because the BIA did so

here, we review its determination, reverse its decision, and remand for further proceedings consistent with the opinion." *Hernandez*, 345 F.3d at 849.

**[11]** Because the IJ acted contrary to law by looking only to the children's current condition and not to the citizen-children's future condition in the event of their parents' removal in making his hardship determination, we reverse the BIA's decision and remand for further proceedings.

## C.　Indiscernibility of the IJ's Opinion

Finally, Petitioners argue that the IJ's decision should be vacated because it is so incoherent that its reasoning cannot be discerned. An indiscernible IJ decision is problematic because "[w]hen the agency's reasoning is indiscernible, 'the courts cannot exercise their duty of review.' " *Recinos De Leon v. Gonzales*, 400 F.3d 1185, 1189 (9th Cir. 2005) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). In such cases, remand is proper. *See id.* at 1187.

Because we grant the petition and remand the case based upon the IJ's errors of law, we need not decide whether the indiscernibility of the IJ's opinion would independently warrant a remand. A review of the IJ's opinion demonstrates, however, that large parts of the opinion are incoherent. We note that, whether it is due to antiquated recording equipment, an exceptionally heavy caseload, or some other reason, the deficiencies in the IJ's opinion certainly have complicated our review.

## V.　CONCLUSION

We hold that we have jurisdiction to hear Petitioners' legal challenges and, considering those challenges on the merits, that the IJ applied the wrong legal standards in making his decision. We therefore grant the petition for review, reverse

the decision of the BIA, and remand the case to the BIA for further proceedings consistent with this opinion.

**PETITION GRANTED, DECISION REVERSED and REMANDED.**