**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| ELPHINSTEN WINATA, | No. 08-70915 |
| Petitioner, | Agency No. A095-838-433 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 15, 2011[**]
Portland, Oregon

Before: PREGERSON and WARDLAW, Circuit Judges, and SEDWICK, District
Judge.[***]

Elphinsten Winata, a native and citizen of Indonesia, petitions for review of

the Board of Immigration Appeals' (BIA) order dismissing his appeal from an

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable John W. Sedwick, Senior District Judge for the U.S.
District Court for Alaska, Anchorage, sitting by designation.

Immigration Judge's (IJ) decision denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252. We grant the petition for review in part, deny in part, and remand for further proceedings.

Because the BIA issued a written opinion, we review the BIA's decision. *Aden v. Holder*, 589 F.3d 1040, 1043 (9th Cir. 2009). However, because the BIA did not explicitly state that it was conducting a de novo review, we may look to the IJ's decision as a guide for the reasoning behind the BIA's decision, particularly on issues that the BIA analyzed in a cursory manner. *See Ahmed v. Keisler*, 504 F.3d 1183, 1190-91 (9th Cir. 2007). We review legal questions de novo, and factual findings for substantial evidence. *Wakkary v. Holder*, 558 F.3d 1049, 1056 (9th Cir. 2009).

Winata, a Chinese Christian, asserts that he fears persecution in Indonesia on account of his ethnicity, religion, and imputed political opinion. The IJ found that Winata's testimony was credible, but that the events recounted did not rise to the level of past persecution. The IJ also concluded that while the disfavored group analysis applied to Winata's claim, *see Sael v. Ashcroft*, 386 F.3d 922, 925 (9th Cir. 2004), Winata had not shown a sufficiently individualized risk of harm to

2

establish a well-founded fear of future persecution. The BIA affirmed, concluding that Winata had not established that he had been subjected to past persecution.[1]

The BIA and IJ failed to account for Winata's age at the time these events occurred. This was legal error. *See Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042 (9th Cir. 2007). In *Hernandez-Ortiz*, we held that when the agency evaluates an asylum application based on events perceived by the petitioner when he was a child, the agency must "look at the events from [the child's] perspective, [and] measure the degree of . . . injur[y] by [the] impact on children of [that] age." *Id.* at 1046. *See also id.* at 1045 ("The *Guidelines for Children's Asylum Claims* advises that harm a child fears or has suffered . . . may be relatively less than that of an

---

[1] The BIA did not address whether Winata had established a well-founded fear of persecution under the disfavored group analysis; therefore we review the IJ's decision with respect to this claim.

3

adult and still qualify as persecution." (internal quotation marks omitted) (quoting

*Liu v. Ashcroft*, 380 F.3d 307, 314 (7th Cir. 2004))).[2]

Here, although all of the relevant events occurred when Winata was between

the ages of eight and fifteen, the agency failed to evaluate these events in light of

Winata's young age. When Winata was eight years old, his sister was kidnapped

---

[2] The government's supplemental brief argues that Winata failed to exhaust this legal claim because Winata did not argue before the BIA that his young age affected his claims for relief, and that we therefore lack jurisdiction over this argument. However, the argument that the agency should have evaluated Winata's showing of persecution in light of his age is *not* a new legal *claim*. Rather, this is merely an extension of Winata's appropriately exhausted argument that he had made a sufficient showing of persecution. We have made clear that the exhaustion requirement should not be employed in a "formalistic manner." *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008). As long as "the issue was before the BIA such that it had the opportunity to correct its error," *id*., the issue has been exhausted. It also bears noting that briefing before the BIA was completed before *Hernandez-Ortiz* was published. *Cf. Alcaraz v. INS,* 384 F.3d 1150, 1158 (9th Cir. 2004) ("We do not require an alien to exhaust administrative remedies on legal issues based on events that occur *after* briefing to the BIA has been completed.").

The government also argues that Winata has waived this argument by failing to raise it in his opening brief. While we "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief," *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) (internal quotation marks and citations omitted), we will do so if the failure to address the issue would result in "manifest injustice," or if the failure to raise the issue does not prejudice the opposing party. *See Alcaraz*, 384 F.3d at 1161. Here, both circumstances are present: (1) the failure to raise this issue would result in manifest injustice because Winata would otherwise be precluded from establishing his eligibility for asylum under the law of our circuit; and (2) the panel cured any potential prejudice to the government by requesting supplemental briefs on the application of *Hernandez-Ortiz* from both parties.

and held for ransom by his family's former driver, a native Indonesian, and she was cut severely on her head and hands during this attack.[3] In 1998, when Winata was twelve years old, he observed anti-Chinese riots from his parent's apartment, and his parents personally observed rioters setting Chinese persons on fire. After the riots, public demonstrations targeting the ethnic Chinese were regular occurrences, and Winata was personally subjected to verbal assaults from his classmates that school authorities refused to proscribe. Finally, in 2000, when Winata was fourteen years old, a bomb exploded at the church inside his school. The bomb exploded in the school's parking lot after a Christmas Eve mass that Winata was supposed to attend, but had not attended because he was sick. Winata testified that indigenous Indonesians had planted this bomb.

---

[3] As noted in *Hernandez-Ortiz*, injuries to family members are particularly traumatic for young children. While the primary motivation for the driver's attack may have been personal retribution for his dismissal, our case law is clear that for pre-REAL ID Act asylum applications, "mixed motives do not negate a legitimate nexus" to a protected ground, *Baghdsaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010). Accordingly, even if the driver was primarily motivated by personal retribution, as long as one of the motivations was related to his sister's ethnicity or religion, this incident meets the nexus requirement. While the police's response to the driver's attack may mean that this event does not qualify as an incident of past persecution, the kidnapping incident may be relevant to Winata's claim of a well-founded fear of future persecution, especially in light of the surrounding circumstances and his young age at the time.

We remand to the agency to consider, in the first instance, whether these incidents rise to the level of past persecution, and whether, under the disfavored group analysis, they establish a well-founded fear of future persecution. *See INS v. Ventura,* 537 U.S. 12, 16 (2002). When evaluating Winata's showing of past persecution and individualized risk of future persecution, we direct the agency to consider the bombing of Winata's school church after a Christmas Day mass that Winata had planned to attend, but did not only because he became ill.[4] We note that under the disfavored group analysis, "because the record establishes that ethnic Chinese are significantly disfavored in Indonesia, [Winata] must demonstrate a 'comparatively low' level of individualized risk in order to prove that [he] has a well-founded fear of future persecution." *Sael*, 386 F.3d at 927 (quoting *Hoxha v. Ashcroft*, 319 F.3d 1179, 1183 (9th Cir. 2003)). And under *Hernandez-Ortiz*, Winata's showing of a comparatively low level of individualized risk must also be evaluated in light of Winata's age at the time these events occurred.

Substantial evidence supports the denial of Winata's application for withholding of removal as Winata did not establish that it was "more likely than not" that he would be subject to persecution in Indonesia. 8 C.F.R. § 208.16(b)(2).

---

[4] The BIA's decision failed to mention this traumatic incident, which must be considered when evaluating the merits of Winata's claim.

Substantial evidence also supports the BIA's denial of CAT relief as Winata failed to establish it was more likely than not that he would be subject to torture. 8 C.F.R. § 208.16(c)(2); *see Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001).

Each party shall bear its own costs for this petition for review.

**PETITION FOR REVIEW GRANTED in part; DENIED in part; REMANDED.**