**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALAZAR GETACHEW ARSDI,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

                    *Respondent.*

No. 10-72147

Agency No.
A028-129-238

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 9, 2011—San Francisco, California

Filed October 24, 2011

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain and Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

---

**COUNSEL**

Evangeline G. Abriel, Santa Clara University School of Law, Santa Clara, California, argued the cause and filed the briefs for the petitioner. With her on the briefs were Neil Banerjee and Maria M. Ciurea, Santa Clara University School of Law, Santa Clara, California.

Aaron R. Petty, United States Department of Justice Office of Immigration Litigation, Washington, D.C., argued the cause and filed the brief for the respondent. With him on the brief were Tony West and Christopher C. Fuller, Department of Justice Civil Division, Washington, D.C.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether an alien exhausted his administrative remedies in challenging an immigration judge's ruling that he had committed a "particularly serious crime" and therefore was subject to removal from the United States.

**I**

Alazar Getachew Arsdi is a native and citizen of Ethiopia, who came to the United States with his mother in 2002 at age fourteen and who became a legal permanent resident in 2005.

On February 17, 2006, the seventeen-year-old Arsdi and a school friend robbed Pedro Cervantes and Jesus Lugo at gun point at a local gas station. Arsdi tried to downplay his role during immigration proceedings, but he admitted that he drove the car, held the gun, and collected the spoils. Fortunately, no one was hurt, and Cervantes was able to provide the police with a description both of his attackers and of their vehicle. The teenagers were apprehended before they disposed of the shotgun or Lugo's ATM card.

Although Arsdi was underage and a first-time offender, the state of Arizona charged him as an adult with armed robbery, a Class 2 felony with a presumptive punishment of five years incarceration. Faced with overwhelming evidence, Arsdi pled guilty. In a show of leniency, the state court sentenced Arsdi to only four years imprisonment, the statutory minimum.

On July 24, 2009, the Department of Homeland Security issued a Notice to Appear, charging Arsdi as removable based on his conviction of an aggravated felony. While represented by counsel, Arsdi conceded removability but applied for asylum and withholding of removal.[1] The immigration judge ("IJ") concluded that because his armed robbery was "particularly serious," Arsdi was statutorily ineligible for such relief.

Arsdi complained to the Board of Immigration Appeals ("BIA") that the "decision by the [IJ denying him relief] failed to take into consideration several facts." However, all of the purported omissions related to Arsdi's claim of a well-founded fear of persecution. Not one pertained to whether pointing a pump action shotgun into the faces of two innocent people constitutes a "particularly serious" crime. Concluding that the IJ "considered the testimony and record in full, and did not overlook any evidence," the BIA adopted the IJ's decision.

---

[1]Arsdi also filed for deferral of removal under the United Nations Convention Against Torture. His appeal regarding that claim is handled in a concurrently filed memorandum disposition.

## II

In timely petitioning for review of the BIA decision here, Arsdi asserts that the IJ failed to apply the appropriate standard to determine whether his crime was "particularly serious." The government objects that we may not properly consider such a claim because Arsdi failed to raise it before the BIA.

[1] Our jurisdiction to hear Arsdi's claim is subject to the strict limits placed by Congress in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), and the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005). As such, we have jurisdiction to review only if he "has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). If Arsdi did not exhaust his claim that the IJ applied the wrong standard to determine whether his crime was "particularly serious," we simply may not review that decision here.

[2] As we have often reiterated, "[i]t is a well-known axiom of administrative law that 'if a petitioner wishes to preserve an issue for appeal, he must first raise it in the proper administrative forum.' " *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) (quoting *Tejeda-Mata v. INS*, 626 F.2d 721, 726 (9th Cir. 1980)). In examining whether the petitioner has met this requirement, we give due " 'regard for the particular administrative scheme at issue.' " *Id.* (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). This rule "prevent[s] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors." *Weinberger*, 422 U.S. at 765.

[3] In this administrative scheme, an alien must first appeal any purported errors by the IJ to the BIA, the body to which consistent application of immigration law is primarily

entrusted. *See* 8 C.F.R. § 1003.1(b). We have repeatedly "held that 'failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter.' " *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004) (quoting *Vargas v. U.S. Dep't of Immigration & Naturalization*, 831 F.2d 906, 907-08 (9th Cir. 1987)).

Indeed, Arsdi did appeal to the BIA. Taking the view of his arguments most likely to give us jurisdiction, he made only a general allegation that the IJ erred in denying him relief. However, an alien "cannot satisfy the exhaustion requirement by making a general challenge to the IJ's decision, but, rather, must specify which issues form the basis of the appeal." *Id.* (citing *Cortez-Acosta v. INS*, 234 F.3d 476, 480 (9th Cir. 2000); *Mabugat v. INS*, 937 F.2d 426, 430 (9th Cir. 1991)).

**[4]** Taking a more realistic view of his claims, Arsdi raised issues completely unrelated to his current contention. An alien need not use precise legal terminology to exhaust his claim. *Agyeman v. INS*, 296 F.3d 871, 877-78 (9th Cir. 2002). Nor must he provide a well developed argument to support his claim, but he *must* put "the issue . . . before the BIA such that it had the opportunity to correct its error." *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008).

Arsdi failed to meet even these minimum requirements. He admitted the facts of his crime and conceded that armed robbery is an aggravated felony under Arizona and federal law. *See* Ariz. Rev. Stat. § 13-1904; 8 U.S.C. § 1101(a)(43) (defining an "aggravated felony" to include, among other things, either a "crime of violence"[2] for which the term of imprison-

---

[2]A "crime of violence" is defined as either "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16.

ment is at least one year or a "theft offense" for which the term of imprisonment is at least one year). This concession not only rendered Arsdi removable, 8 U.S.C. § 1227(a)(2)(A)(iii), it automatically made him ineligible for asylum. *Id*. § 1158(b)(2)(B)(i) ("[A]n alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime."). If Arsdi had received the presumptive five year sentence for his crime, *see* Ariz. Rev. Stat. § 13-702, this concession would also have made him automatically ineligible for withholding of removal. 8 U.S.C. § 1231(b)(3)(B) (defining any aggravated felony with a sentence of more than five years imprisonment as "particularly serious"). But rather than even attempting to argue that this lesser sentence somehow made his crime *not* "particularly serious," he argued completely different objections to the IJ.

**[5]** Put simply, Arsdi did not "put the BIA on notice," *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam), that he took issue with the IJ's analysis regarding whether his armed robbery was a "particularly serious" crime. As a result, the BIA had no "opportunity to pass on this issue." *Id.*

Of course, if an alien raises an issue to the IJ, and the BIA "elect[s] to consider [it] on its substantive merits" despite a procedural default by the alien, the alien is deemed to have exhausted the claim. *Abebe v. Gonzales*, 432 F.3d 1037, 1041 (9th Cir. 2005) (en banc) (when the BIA adopts the IJ's decision citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), it adopts the reasoning as well). Similarly, if the IJ's decision was facially premised on an incorrect factual finding or legal conclusion, and the BIA nonetheless adopted the decision, we will also deem the alien to have exhausted the claim. *Figueroa*, 543 F.3d at 493; *see also Mutuku v. Holder*, 600 F.3d 1210, 1213 (9th Cir. 2010). Under such circumstances, the agency "had a full opportunity to resolve the controversy or correct its own errors before judicial intervention."

*Figueroa*, 543 F.3d at 493 (internal quotation marks and emphasis omitted). Furthermore, the "BIA is presumably aware of its ability to decline to review an argument when a petitioner has not properly raised the argument on appeal to the BIA." *Abebe*, 432 F.3d at 1041.

But that was not the case here. The BIA did not "explicitly discuss[ ]," *id.*, whether Arsdi was convicted of a "particularly serious crime." Nor does Arsdi claim that the IJ's decision contains a facially invalid statement of law or fact. Rather, Arsdi merely challenged the IJ's application of the *Frentescu* factors in concluding that he was ineligible for relief. *Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982).[3]

**[6]** This was not enough. The only way to give the agency the "opportunity to correct its own errors," *Weinberger*, 422 U.S. at 765, was to raise the "particularly serious" issue before the BIA, which he simply failed to do.[4]

### III

**[7]** Because Arsdi did not exhaust the issue before the BIA, we have no jurisdiction to consider whether or not his crime is "particularly serious." His petition for review as to this claim is **DISMISSED**.

---

[3]Because Arsdi's conviction of a "particularly serious crime" renders him ineligible for either asylum or withholding, 8 U.S.C. §§ 1158(b)(2)(B)(I), 1231(b)(3)(B), we do not reach any other potential error the IJ may have made in denying relief.

[4]As the government points out, an alien may also move for reconsideration or reopening of the IJ's decision. *See* 8 U.S.C. § 1229a(c)(6)-(7). Because these motions are not remedies available to the alien, as "of right," an alien need not use them in order to exhaust his claim. 8 U.S.C. § 1252(d)(1). However, these multifarious methods of review highlight the import Congress placed on allowing the agency to correct its own mistakes prior to interference by the federal courts.