**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 13 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HUBER IVAN SERRANO-ESTRADA, Petitioner, v. MERRICK B. GARLAND, Attorney General, Respondent. | No. 21-1020 Agency No. A213-366-589 MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 8, 2023
San Francisco, California

Before: CHRISTEN and BRESS, Circuit Judges, and ANTOON, District Judge.[**] Dissent by Judge CHRISTEN.

Huber Ivan Serrano-Estrada, a native and citizen of Mexico, petitions for

review of a Board of Immigration Appeals (BIA) decision dismissing his appeal

of an Immigration Judge (IJ) order denying his applications for asylum,

withholding of removal, and protection under the Convention Against Torture

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

(CAT). Serrano-Estrada does not challenge the denial of asylum or withholding of removal. We review the denial of CAT relief for substantial evidence. *Sharma v. Garland*, 9 F.4th 1052, 1066 (9th Cir. 2021). "Under this standard, we must uphold the agency determination unless the evidence compels a contrary conclusion." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). "Where the BIA issues its own decision but relies in part on the immigration judge's reasoning, we review both decisions." *Flores-Lopez v. Holder*, 685 F.3d 857, 861 (9th Cir. 2012). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1. Serrano-Estrada challenges the IJ's adverse credibility determination, but the BIA did not adopt or rely on this determination. We thus do not address the IJ's adverse credibility finding. *Garcia v. Wilkinson*, 988 F.3d 1136, 1142 (9th Cir. 2021) ("In reviewing the BIA's decisions, we consider only the grounds relied upon by that agency."). Contrary to Serrano-Estrada's assertions, there is no basis to conclude that the IJ's adverse credibility determination "washed over" the BIA's CAT analysis.

2. Substantial evidence supports the denial of CAT protection. An alien seeking relief under the CAT must establish that he "will more likely than not be tortured with the consent or acquiescence of a public official if removed to h[is] native country." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020). Here, the record does not compel the conclusion that Serrano-Estrada faces a particularized likelihood of torture with the consent or acquiescence of

government officials. Serrano-Estrada alleges future torture from several sources, but in each instance substantial evidence supports the denial of relief.

First, substantial evidence supports the BIA's determination that it is not more likely than not that government officials in Mexico will torture Serrano-Estrada. The BIA recognized that, assuming Serrano-Estrada is credible, he has suffered severe mistreatment at the hands of the police in the past. However, the BIA also noted that Serrano-Estrada has not faced harm from government actors since 2010, despite his continued affiliation with cartels. The BIA also relied on the fact that government officials previously helped Serrano-Estrada get transferred to a different prison for his safety. The BIA found this evidence relevant to the question whether Serrano-Estrada would likely be tortured if returned to prison.

On these facts, the record does not compel a finding that Serrano-Estrada is more likely than not to face future torture at the hands of government officials, or that Serrano-Estrada faces a likelihood of torture from other inmates if returned to prison. Although Serrano-Estrada points to country conditions evidence showing corruption, violence, and poor conditions in Mexico, "generalized evidence of violence and crime" in the country of removal "is insufficient to meet th[e] [CAT] standard." *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curiam).

Second, substantial evidence supports the BIA's determination that the Barbosa family is not more likely than not to torture Serrano-Estrada with the

consent or acquiescence of government officials. As the IJ noted, Serrano-Estrada "suffered no serious harm at the hands of the Barbosa family following his escape from prison in 2007." This includes a period of two and a half years, from approximately 2010 to 2013, during which Serrano-Estrada claims to have been incarcerated.[1] On this record, substantial evidence supports the BIA's conclusion that a risk of future torture from the Barbosa family was speculative. The dissent cites evidence that the Barbosa family threatened Serrano-Estrada's daughter and that a friend told him the Barbosa family was still looking for him, but this evidence is vague and non-descript and does not compel a finding of likely future torture.

Third, to the extent Serrano-Estrada alleges that the Mexican government will consent or acquiesce to his torture by the Jalisco New Generation Cartel, that claim was not properly preserved. At most, Serrano-Estrada's brief to the BIA mentioned this theory only in passing. A petitioner "*must* put 'the issue . . . before the BIA such that it had the opportunity to correct'" the asserted error.

---

[1] The dissent asserts that the BIA did not rely on this period of incarceration, but that is not correct. The BIA relied on the *entire period* following Serrano-Estrada's 2007 escape, explaining that "the Immigration Judge found that [Serrano-Estrada] did not identify any serious harm by the family of the deceased man following his 2007 escape from prison." Nor does the record compel the dissent's conclusion that Serrano-Estrada was in hiding after 2010. For example, after he was released from prison in 2013, Serrano-Estrada went to live with his parents, was allegedly active in fighting a cartel, and was in contact with a childhood acquaintance who was associated with the Jalisco New Generation cartel. Serrano-Estrada was also in contact with government officials connected to the governor of the state of Michoacan.

*Arsdi v. Holder*, 659 F.3d 925, 929 (9th Cir. 2011) (quoting *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008)). Serrano-Estrada did not do so here. Nor did he sufficiently raise this theory in his opening brief. *Diego v. Sessions*, 857 F.3d 1005, 1015 n.4 (9th Cir. 2017) (issues not specifically and distinctly raised in opening brief are waived); *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").

**PETITION DENIED.**[2]

---

[2] The motion for stay of removal is denied as moot.



*Serrano-Estrada v. Garland*, No. 21-1020
CHRISTEN, J., dissenting:

This case differs from others in which petitioners assert vague fears of being imprisoned if they are removed from the United States. Serrano-Estrada, a former Mexican police officer, was beaten in prison by other inmates he had helped to convict and targeted by a cartel for murder. He is virtually certain to be reincarcerated if he returns to Mexico because he escaped from prison before completing his original sentence. Despite the particularized risks he faces, our court affirms the BIA's determination that Serrano-Estrada's claimed risk of harm was speculative, and declines to consider Serrano-Estrada's claims that "the Mexican government will consent or acquiesce to his torture by the Jalisco New Generation Cartel[.]" Because I find strong evidence that Serrano-Estrada's life is at risk in prison in Mexico, and because the Government conceded at oral argument that the BIA failed to consider acquiescence and that remand would be appropriate if we reach this issue, I would grant the petition and remand to the BIA for further consideration. Accordingly, I respectfully dissent.

Serrano-Estrada served as a police officer in Michoacan, Mexico after he completed his service in the military in 2003. He began having problems with Jonathan Penalosa, the son of drug traffickers, sometime before 2005. In October of that year, he was attacked outside a bar by Penalosa, Penalosa's friend Emanuel

1

Barbosa, and others. A scuffle ensued and Serrano-Estrada's service revolver discharged twice. Barbosa was shot and he died from his injuries. Serrano-Estrada was shot in the knee and hospitalized. Barbosa's family was associated with the Jalisco New Generation cartel and tried to have Serrano-Estrada killed in the hospital. Despite numerous witness statements that corroborated his version of the unprovoked attack, Serrano-Estrada was convicted and sentenced to18 years in prison. He alleges that the Barbosa family either bribed the prosecution or the judge, because he acted in self-defense. Apparently unsatisfied with the sentence, Barbosa's family hired a hitman named Benito to kill him in prison. The record strongly supports the conclusion that the Barbosa family posed a true threat, and that Serrano-Estrada was also beaten by inmates he had helped prosecute. Prison officials transferred Serrano-Estrada for his safety. Though some prison officials had helped Serrano-Estrada, country conditions evidence supports Serrano-Estrada's contention that corruption is rampant in Mexican criminal justice system, and the man hired to kill Serrano-Estrada was transferred to a cell adjacent to Serrano-Estrada's. The Barbosa family's plan was thwarted because Serrano-Estrada escaped in 2007, with the help of another inmate who convinced him he would be killed if he stayed there. Notably, the other inmate effectuated the escape by bribing a different prison official.

2

In denying petitioner's CAT claim, the IJ recognized the likelihood that Serrano-Estrada will be returned to prison if he is removed to Mexico, but the IJ was unpersuaded that Serrano-Estrada's "history with the Barbosa family and speculative testimony regarding their connection to government officials establish a likelihood that those past experiences significantly increase his risk of torture. Indeed, the respondent suffered no serious harm at the hands of the Barbosa family following his escape from prison in 2007." The BIA affirmed, and the majority finds substantial evidence supporting the BIA's decision that Serrano Estrada has not shown he is more likely than not to face torture from the Barbosa family because the family has not harmed him since he escaped from prison. The majority places particular emphasis on the two-and-a-half-year period between 2010 to 2013 when Serrano-Estrada was again incarcerated.[1] I disagree that substantial evidence supports the BIA's decision.

First, the BIA's reasoning overlooks that Serrano Estrada lived under an alias after his prison escape and that he frequently moved around the country to avoid detection. Our court has observed that "[w]hen an applicant flees and goes into hiding to avoid torture, it can hardly be said that the absence of past harm negates the likelihood of future torture." *Akosung v. Barr*, 970 F.3d 1095, 1105 (9th Cir.

---

[1] The BIA analysis did not specifically acknowledge this period of re-incarceration, much less the fact that the authorities apparently failed to determine Serrano-Estrada's true identity during this period.

2020). The Mexican government failed to determine Serrano-Estrada's identity when he was detained in 2010. For these reasons, the fact that Serrano-Estrada was unharmed during the period between 2010 – 2013 does not support the inference that the Barbosa family will not harm him if he is returned to Mexico under his true identity.

Separately, the BIA failed to recognize that the IJ focused only on the risk that the government would cooperate with the Barbosa family's efforts to avenge Emanuel Barbosa's death, not on whether the government would be *able* to prevent the Barbosa family from carrying out its plan to have Serrano Estrada murdered. *See Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011) (explaining that "acquiescence" to torture includes the inability to prevent it, as well as unwillingness to do so). The IJ discussed only "future harm rising to the level of torture by government actors," not the risks Serrano-Estrada faces from other inmates or whether prison officials will be able to protect him from harm. Finally, the BIA failed to grapple with the evidence showing that petitioner's daughter has continued to receive threats from the Barbosa family, or with the evidence that a friend told Serrano-Estrada that the Barbosa family was still looking for him not long before he fled to the United States.

Having shown a particularized risk of torture, Serrano Estrada is eligible for CAT relief if the Mexican government is unwilling or unable to protect him. At oral

4

argument before our court, Government counsel conceded that the BIA failed to consider acquiescence and that, if we reach acquiescence, remand to the BIA would be appropriate. I agree. Because I would grant Serrano-Estrada's petition and remand to the BIA to consider whether petitioner met his burden of showing that the Mexican government is unable to protect him in prison, I respectfully dissent.