**YAN ZHOU, Petitioner,**

v.

Peter D. KEISLER,* Acting Attorney
General, Respondent.

No. 05–74292.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 17, 2007.**

Filed Nov. 13, 2007.

---

* Peter D. Keisler is substituted for his predecessor, Alberto R. Gonzales, as Acting Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

** The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

J. Jack Artz, Esq., Law Office of J. Jack Artz, Norwalk, CA, for Petitioner.

Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Anthony C. Payne, Esq., Margaret K. Taylor, Esq., DOJ–U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: FARRIS, BOOCHEVER, and LEAVY, Circuit Judges.

## MEMORANDUM ***

Yan Zhou (Zhou), a native and citizen of China, petitions for review of the decision of the Board of Immigration Appeals (BIA) affirming the denial by an immigration judge (IJ) of his requests for asylum and withholding of removal.

The BIA, citing *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994), conducted an independent review, and adopted the IJ's decision in its entirety. *See Abebe v. Gonzales*, 432 F.3d 1037, 1040 (9th Cir.2005) (en banc). We review the IJ's decision for substantial evidence. *Lin v. Gonzales*, 434 F.3d 1158, 1160 (9th Cir.2006). We grant the petition in part, dismiss in part, and remand.[1]

---

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. We do not reach Zhou's claim for relief under the Convention Against Torture because he did not argue it in his opening brief. *See Martinez–Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir.1996).

## A. *Asylum*

■ We lack jurisdiction to review the IJ's determination that Zhou is statutorily ineligible for asylum because of the one-year time bar, and that Zhou failed to establish changed or extraordinary circumstances that would excuse the late filing of the asylum application. *See* 8 U.S.C. § 1158(a)(2)(B); *Ramadan v. Gonzales,* 479 F.3d 646, 657–58 (9th Cir.2007); *see also* 8 C.F.R. 1208.4(a)(5).

## B. *Withholding of Removal*

We have jurisdiction under 8 U.S.C. § 1252 to review Zhou's withholding of removal claim because the one-year deadline applies only to the asylum application. *See Shire v. Ashcroft,* 388 F.3d 1288, 1294 (9th Cir.2004).

The IJ determined that Zhou did not testify credibly. The IJ determined alternatively that, assuming credibility, Zhou's experiences did not rise to the level of persecution. Upon review for substantial evidence, we conclude that the evidence in the record compels the conclusion that Zhou was credible and that he experienced past persecution.

### 1. *Credibility Determination*

■ As a preliminary matter, the government argues that we lack jurisdiction to review Zhou's challenge to the IJ's credibility determination because Zhou failed to exhaust his argument that he did not have an "adequate opportunity to explain" before the BIA. We reject the government's argument. Zhou's notice of appeal to the BIA challenged the adverse credibility determination, and his brief to the BIA included the assertion, "The judge must also listen and provide the Appellant the opportunity to explain or clarify any alleged inconsistency in order to conduct a fair and just hearing." Zhou sufficiently exhausted his adverse credibility argument before the BIA. *See Ladha v. INS,* 215 F.3d 889, 903 (9th Cir.2000) (explaining that remedies are exhausted if the BIA has "a full opportunity to resolve the controversy or correct its own errors before judicial intervention") (internal citation and alteration omitted).

■ The IJ stated that Zhou's documents, including his passport, letter from his wife, letter from his father, discharge notice from work, and medical certificate, were all "highly suspect." However, the IJ gave no reasons why the documents were suspect other than their lack of authentication. The failure to supply affirmative authentication for documents does not, by itself, constitute a failure to meet the substantial evidence standard. *See Shire,* 388 F.3d at 1299 ("Mere failure to authenticate documents, at least in the absence of evidence undermining their reliability, does not constitute a sufficient foundation for an adverse credibility finding." (Quotation omitted)). Therefore, the IJ's conclusion that the documents were "highly suspect" is not supported by substantial evidence.

■ The IJ concluded that Zhou's reasons for the late filing of his asylum application were "completely unbelievable." Zhou stated, both in his written statement and his testimony, that he lacked funds because of heavy fines imposed by the Chinese government as punishment for having a second child, and that he was afraid of retribution against his family if the Chinese government learned that he applied for religious asylum. He also testified that he did not know English when he arrived in this country. The IJ failed to give reasons why Zhou's explanation was "completely unbelievable." *See Zhou v. Gonzales,* 437 F.3d 860, 865 (9th Cir. 2006) (concluding that the IJ failed to iden-

tify any specific, cogent reason to support his incredibility finding).

■ The IJ stated that Zhou omitted from his written statement that the church meetings were transferred to his house, and concluded that this was a material omission. Zhou's written statement states that he "started to help people who were in trouble like me, and preached the gospel to them." When asked during the hearing why he was summoned to the police station, he replied that it was because he was "promoting the Christian religion" and because there was a meeting in his house. Zhou explained after further questioning that the meetings were first held in a friend's house, then later held at his house because it was a more central location. The omission of these details from Zhou's written statement is not a material omission. *See Smolniakova v. Gonzales,* 422 F.3d 1037, 1045 (9th Cir.2005) (stating that an asylum application is not inconsistent with later, more detailed descriptions explaining the events).

■ The IJ concluded that Zhou "does not remember who he made these [religious] statements to." However, the record discloses only that Zhou was asked when he made the statements, and he answered that he could not recall the month but that it was "in the summertime." Zhou was never asked to whom he made the statements.

■ Zhou testified about his religious conversion, baptism, and discussions of faith with his neighbors. The IJ found this testimony to be "vague and inconsistent." However, the IJ failed to point out any inconsistency in Zhou's statements, therefore this conclusion is unsupported by substantial evidence. *See Zhou,* 437 F.3d at 866.

■ The IJ concluded that Zhou's testimony about his detention and injury con-

flicted with his written statement because Zhou failed to mention in his written statement that his hand was cut when he tried to protect himself from having further cigarette burns on his hand. The differences between Zhou's written statement and testimony are not material. Zhou wrote that he was beaten and kicked and that the police burned his hands with cigarettes. Zhou testified that he "tried to protect myself with my hands, and they used a cigarette butt to burn me. And because I tried to avoid further burns I hit my hand unto glass and my hand was cut open." Zhou explained that the glass cut required six stitches that he later removed himself. He testified that the cigarette burn became infected and left a visible scar. Zhou's written asylum application is not inconsistent with his later, more detailed testimony describing his detention and injuries. *See Smolniakova,* 422 F.3d at 1045.

■ The IJ concluded that Zhou's testimony that he sent his wife banned religious materials, thereby putting her in jeopardy with the Chinese authorities, was "nonsense" and "completely implausible." Zhou testified that his wife was detained after authorities confiscated the religious materials, and that his wife is now missing. The IJ stated that Zhou's description of what happened to his wife in China was "utterly ridiculous and unbelievable." Yet the IJ failed to give any reasons for the implausibility. The State Department's Reports state that China's respect for freedom of religion remains poor, and that members of unregistered religious groups, including house churches, are subjected to increased restrictions, including intimidation, harassment, and detention. The IJ gave no specific reason for minimizing and ridiculing the sincerity of Zhou's religious beliefs and actions.

The IJ stated that Zhou's testimony about the police coming by his house after his release was inconsistent because the IJ concluded that "public security was not investigating him at all." Zhou testified that prior to his detention, people gathered to have discussions in the public area downstairs where he lived. He testified that after his release, the police, making regular rounds, "came to the grounds downstairs to take a look." The IJ failed to support its finding with specific, cogent reasons. *See Zhou,* 437 F.3d at 865. Zhou testified that his construction license was suspended after his release. The IJ relied upon speculation without foundation to conclude that Zhou did not demonstrate that he could not find other employment. *See Shire,* 388 F.3d at 1296.

In summary, the overall record lacks evidence upon which an adverse credibility determination can be made. Therefore, Zhou is deemed credible. *See id.* at 1299.

### 2. *Past Persecution*

The IJ determined alternatively that even if Zhou testified credibly, the events he experienced did not constitute past persecution. The evidence, however, compels a contrary conclusion. Zhou suffered a three-day detention, physical injury, a scar, threats of additional harm, loss of his business license, and the detention and disappearance of his wife. *See Guo v. Ashcroft,* 361 F.3d 1194, 1203–04 (9th Cir. 2004) (finding past persecution where Chinese police detained, interrogated, and physically harmed petitioner for Christian home church involvement, threatening him with further harm for continued religious practice, and where employment was affected by the detention); *Baballah v. Ashcroft,* 367 F.3d 1067, 1076 (9th Cir.2004)

(stating that harassment, threats, and discrimination that made it impossible to work constituted past persecution).

Because Zhou established past persecution, he is entitled to a presumption of eligibility for withholding of removal. *See Baballah,* 367 F.3d at 1079; 8 C.F.R. § 1208.16(b)(1)(i). Since the agency did not reach the question whether the government can rebut this presumption based on current conditions in China, we remand this question to the BIA under *INS v. Ventura,* 537 U.S. 12, 17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

**PETITION FOR REVIEW GRANTED in part and DENIED in part; REMANDED.**

* This disposition is not appropriate for publication and is not precedent except as provided